**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRYAN SCOTT RUTKOWSKI,

        Plaintiff,

v.                                 Case No. 6:15-cv-454-Orl-37KRS

CITY OF TITUSVILLE; WAYNE IVEY;
and GLEN HAMANN,

        Defendants.

_____

**ORDER**

This cause is before the Court on the following:

1.    Defendant City of Titusville's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 14), filed March 24, 2015;

2.    Motion to Dismiss, With Prejudice, by Defendant Sheriff Wayne Ivey (Doc. 19), filed March 27, 2015;

3.    Plaintiff's Response to City of Titusville's Motion to Dismiss (Doc. 24), filed April 6, 2015;

4.    Plaintiff's Response to Sheriff's Motion to Dismiss (Doc. 25), filed April 6, 2015;

5.    Defendant, Glen Hamann's Motion to Dismiss Plaintiff's Complaint with Prejudice with Memorandum of Law in Support (Doc. 28), filed April 27, 2015; and

6.    Plaintiff's Response to Glen Hamann's Motion to Dismiss (Doc. 29), filed May 11, 2015.

**BACKGROUND**

Plaintiff brings this negligence and defamation action to recover damages for the incorrect use of his name and photograph in connection with the investigation, arrest, and report of a suspected child molester conducted by the Titusville Police Department ("TPD") and Brevard County Sheriff's Office's ("BCSO") in May of 2014. (Doc. 2.)

When a mother ("Mother") notified the TPD and the BCSO that her cousin–Bryan *Kurt Rutkosky*–molested her child, a BCSO deputy ("Deputy") and a TPD detective ("Detective") responded to the scene to investigate. (*Id.* ¶¶ 1–4.) At the scene, the Deputy incorrectly provided the Detective with the name and identifying information of Plaintiff Bryan *Scott Rutkowski* instead of Rutkosky. (*Id.* ¶¶ 3–4.) TPD used this information to prepare a police report ("Police Report") and arrest paperwork ("Arrest Affidavit"). (*Id.* ¶ 6.)

The following day, Suspect voluntarily surrendered at the TPD, where he was arrested and booked through the BCSO. (*Id.* ¶ 7.) Neither the TPD nor the BCSO corrected the errors in the Police Report or Arrest Affidavit, and they "appended Rutkowski's personal information to  Rutkosky's booking photo ["Booking Photo"]." (*Id.* ¶¶ 7–8; *see also* Doc. 2-1.)

That evening, Glen Hamann, a TPD Sergeant, "emailed a detailed News Release ["News Release"] to approximately 35 news agencies[,] which stated 'Man Arrested for Lewd and Lascivious Molestation on a Child Under Twelve' and identified the 'Man' as" Rutkowski rather than Rutkosky. (Doc. 2, ¶ 9; Doc. 2-2.) The next morning, Mother notified Detective, who in turn informed Hamann, that the information in the News Release was incorrect. No corrective action was taken. (Doc. 2, ¶ 10.)

Several days later, the TPD eventually corrected the information in the Police Report and attached to the Booking Photo. They also retracted the News Release. By that time, Rutkowski's "information and purported arrest for lewd and lascivious molestation was on dozens of private websites, and it generated an arrest record with the [Florida Department of Law Enforcement ("FDLE")] and other federal agencies." (*Id.* ¶¶ 12, 14.) As of July 8, 2014, the Brevard County Clerk of Court's case file still contained Plaintiff's information, and as of July 28, 2014, the FDLE records still contained a criminal arrest for Plaintiff. (*Id.* ¶ 15.)

On February 2, 2015, Plaintiff filed this action in state court against the following Defendants: (1) the City of Titusville ("City"); (2) Wayne Ivey, the BCSO Sheriff; and (3) Glen Hamann, in his individual capacity.[1] (Doc. 2.) The City removed the action to this Court (Doc. 1) with Ivey and Hamann's consent (*see* Docs. 5, 6). The Defendants move to dismiss. (Docs. 14, 19, 28.) Plaintiff opposes (Docs. 24, 25, 29), and the matters are now ripe for adjudication.

## STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations" in the complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff; however, this "tenet . . . is inapplicable to legal

---

[1] Prior to filing suit, Plaintiff served the Defendants pre-suit notice. (*See* Doc. 2-3.)

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## DISCUSSION

All three Defendants separately move to dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6). (Docs. 14, 19, 28.) The Court will address the arguments pertaining to each *claim* in turn.

### I.   Count I—Negligence

Plaintiff asserts a negligence claim against all Defendants.[2] (Doc. 2, ¶¶ 22– 27.) "[T]o maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Sorvillo v. Ace Hardware Corp.*, No. 2:13-cv-629-FtM-29DNF, 2014 WL 3611147, at *2 (M.D. Fla. July 22, 2014) (citing *Florida Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007)). The City and Sheriff contend that, as a municipality and governmental agency, respectively, they did not owe a legal duty to Plaintiff (*see* Doc. 14, pp. 4–7; Doc. 19, pp. 5–9), and Hamann contends that he is immune from tort liability pursuant to Florida Statute § 768.28(9) (*see* Doc. 28, pp. 5–10).

A municipality is liable for negligence if its actions or inaction violate a duty of care sufficient to subject a private person to liability under the laws of Florida.[3] *Asprilla v.*

---

[2] Plaintiff is entitled to plead in the alternative. *Searer v. Wells*, 837 F. Supp. 1198, 1202 (M.D. Fla. 1993) ("[N]o harm is done by construing Plaintiff's allegations as alternative claims for relief, especially in light of the fact that liberal construction of pleadings is in line with the Federal Rules of Civil Procedure."). The Court, therefore, rejects the City's argument that Plaintiff violated Florida Statute § 768.28 by asserting his negligence and gross negligence claims against "All Defendants" and his defamation claim against "Titusville Police Department and Mr. Hamann." (Doc. 14, pp. 11–12.)

[3] When a municipality is sued in negligence, courts must consider an additional factor: whether the alleged act was "'discretionary' in nature—as opposed to

*Trinidad*, No. 6:09-cv-101-Orl-28KRS, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009).

When a private person's conduct creates a foreseeable zone of risk, "Florida law generally will recognize a duty upon [that person] to either lessen the risk or see that sufficient precautions are taken to protect persons within that zone of risk from the harm that the risk poses." *Id.*; *see also Mosby v. Harrell*, 909 So. 2d 323, 327 (Fla. 1st DCA 2005). Concluding that a city's knowledge of the falsity of its officer's allegations in a charging affidavit gave rise to a duty to deliver exculpatory evidence, the *Asprilla* Court explained:

> A private party filing a charging affidavit would owe a duty to exercise reasonable care in doing so because it is reasonably foreseeable that as a result of a false charging affidavit, the wrongly accused would be prosecuted. Discovery of evidence establishing the falsity of a charging affidavit prior to the prosecuting authority filing charges would create a duty to disclose this evidence either to lessen the risk of, or to protect from, an improper prosecution.

*Id.* It follows that, here, the City had a similar duty to exercise reasonable care when issuing its Police Report, Arrest Affidavit, and News Release and to make corrections once it discovered they contained false information. Plaintiff's Complaint adequately sets forth the essential elements of a negligence cause of action. Plaintiff alleges a duty of

---

'operational'—and therefore immune from tort liability." *Asprilla*, 2009 WL 2151156 at *3 (citing *Mosby*, 909 So. 2d at 326–27). The acts of writing a police report or arrest affidavit and sending a news release are discretionary. *See Asprilla*, 2009 WL 2151156 at *4 ("[A] 'discretionary' act is one which involves 'an exercise of executive or legislative power such that a court's intervention by way of tort law would inappropriately entangle in the court in fundamental questions of policy and planning.'"). But the failure to correct false information contained therein is an operational act. *Id.* ("When a member of a police department has knowledge that a false charging affidavit has been filed, the duty to disclose this knowledge to the prosecuting authority cannot be deemed by this Court to be a discretionary duty."). The TPD's alleged failure to correct the false information despite having actual knowledge of its falsity (*see* Doc. 2, ¶¶ 7, 9, 10, 12) was *not* discretionary and, therefore, not immune from liability.

care owed to him by the City, a breach of that duty, and resulting damages.[4] (Doc. 2, ¶¶ 24–27.)

Although a governmental agency typically does not owe a duty of care for general governmental functions, a special tort duty arises when "law enforcement officers become *directly involved* in circumstances which place people *within* a '*zone of risk*' (1) by *creating or permitting* dangers to exist, (2) by taking persons into police *custody*, (3) *detaining* them, *or* (4) *otherwise subjecting them to danger*." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985). A governmental agency owes a special legal duty to act non-negligently when it becomes aware of mistakes in its records that may have adverse consequences for the plaintiff and fails to correct those mistakes. *See Glenney v. Forman*, 936 So. 2d 660, 662 (Fla. 4th DCA 2006). A special duty arose in this case when the BCSO became aware that the information attached to the Booking Photo was incorrect. Plaintiff's allegations that BCSO knew of the mistakes yet failed to correct them for several days or to notify the Brevard County Clerk of Court for several months establish a breach of duty that caused Plaintiff to suffer damages (Doc. 2, ¶¶ 8, 12, 15, 24–27), and they are sufficient to state a claim for negligence.

As to Hamann, under § 768.28(9)(a), an officer, employee, or agent of the state may not be held personally liable or named as a party defendant in an action for injury or damage resulting from an act undertaken in the scope of employment unless that action

---

[4] The Court rejects the City's argument that Plaintiff's negligence claim is barred by sovereign immunity. (Doc. 14, p. 4.) Florida has waived its immunity from tort liability "under circumstances in which the state or [an] agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of [the] state." Fla. Stat. § 768.28(1). As discussed, a private person would be liable for the alleged negligence. Therefore, the City is not immune from suit.

was undertaken in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. In Count I, Plaintiff fails to allege that Hamann's acts of issuing the News Release and failing to correct it or issue a retraction were done in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights. (*See* Doc. 2, ¶¶ 1–27.) As such, Hamann's motion is due to be granted with respect to the negligence claim.

## II.     Count II—Gross Negligence

Plaintiff also asserts a gross negligence claim against all Defendants. (Doc. 2, ¶¶ 28–33.) Beyond the elements of an ordinary negligence claim, gross negligence requires: (1) circumstances that constitute an imminent or clear and present danger amounting to more than normal and usual peril; (2) chargeable knowledge or awareness of the imminent danger spoken of; and (3) an act or omission that evinces a conscious disregard of consequences.[5] *Deutsche Bank Nat'l Trust Co. v. Foxx*, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013) (applying Florida law); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1294 (M.D. Fla. 2003) (same). Each Defendant moves for dismissal on different grounds.[6]

In regards to the City, Plaintiff alleges that: the incorrect information used in the Police Report, Arrest Affidavit, and News Release led to him having an arrest record for,

---

[5] Having found that both the City and Ivey owed a legal duty to Plaintiff, the Court rejects their arguments that the claim should be dismissed on the ground that they did not owe such a duty. (*See* Doc. 14, pp. 7–8; Doc. 19, p. 10.)

[6] Pertinent to the claim against each Defendant, Plaintiff's allegations that the Police Report, Arrest Affidavit, Booking Photo, and News Release led to Plaintiff's name showing up on dozens of websites in connection with the "appalling and reprehensible" crime of "lewd and lascivious molestation" (*id.* ¶¶ 6, 15) are sufficient for the Court to find that the circumstances presented a danger amounting to more than the usual peril.

and his name being publicly associated with, a serious crime committed by another person (Doc. 2, ¶¶ 14, 24); the TPD had actual knowledge that the information in the Police Report, Arrest Affidavit, and News Release was incorrect (*id.* ¶¶ 7, 10); and, despite knowing that the information was incorrect and that it could have adverse consequences (*id.* ¶ 18), the TPD failed to take any corrective action for several days with "a conscious disregard" of the consequences (*id.* ¶¶ 10, 12, 25, 32). At this stage of the proceedings, such allegations suffice. Discovery will likely reveal whether any or all of the Defendants acted with the requisite indifference.

Ivey argues that the gross negligence claim should be dismissed because "there is no allegation in the Complaint that the deputies knew that their actions were likely to injure anyone, including the Plaintiff." (Doc. 19, p. 10.) Not so. Plaintiff alleges that: a BCSO Deputy gave the incorrect information to the TPD, which started the cascade of negative implications for Plaintiff by connecting his name and identity "with one of the most appalling and reprehensible of crimes" (Doc. 2, ¶¶ 3–4, 6); the BCSO had actual knowledge that Plaintiff was not the offender (*id.* ¶¶ 7); and, despite knowing that its information was incorrect, the BSCO failed to take corrective action for several months with a "conscious disregard" of the consequences (*id.* ¶¶ 15, 32). Albeit thin, these allegations sufficiently state a cause of action for gross negligence against Ivey.

Hamann again argues that he is immune from liability pursuant to § 768.28(9). (Doc. 28, pp. 5–10.) This time unsuccessfully due to Plaintiff's allegations that Hamann's conduct in issuing the News Release and failing to correct it "was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of persons exposed to such conduct." (Doc. 2, ¶ 32.) Moreover, Plaintiff's allegations that Hamann

emailed the News Release (*id.* ¶ 9), knew that the News Release contained false information (*id.* ¶¶ 9–10), and failed to correct the information or issue a retraction with a "conscious disregard" of the consequences (*id.* 10, 32), state a cause of action for gross negligence against Hamann.

### III.     Count III—Defamation

Plaintiff asserts a defamation claim against the City[7] and Hamann (Doc. 2, ¶¶ 34–39), who both contend that they are immune from liability based on absolute privilege. (Doc. 14, pp. 8–10; Doc. 28, pp. 10–13.) A statement made by a public official within the scope of his authority is absolutely privileged. *Crowder v. Barbati*, 987 So. 2d 166, 168 (Fla. 4th DCA 2008) (citing *McNayr v. Kelly*, 184 So. 2d 428, 431–33 (Fla. 1966)). The act of issuing a press release concerning official duties is within the scope of an officer's duties. *See Crowder*, 987 So. 2d at 168. Construing the phrase broadly, *see Mueller v. The Florida Bar*, 390 So. 2d 449, 451 (Fla. 4th DCA 1980) ("Precedent indicates an inclination to give a broad definition to the term 'scope of office' and its synonyms."), the Court finds that Hamann was acting within the scope of his duties as a TPD police officer when he issued the News Release to the agencies. Plaintiff's conclusory allegation to the contrary (Doc. 2, ¶ 11) is unavailing. *See Johnsen v. Carhart*, 353 So. 2d 874, 876 (Fla. 3d DCA 1977) (explaining that absolute immunity applies even if a plaintiff provides a conclusory allegation that the official was "without such immunity or was acting beyond

---

[7] Plaintiff actually asserts Count III "[a]gainst Titusville Police Department and Mr. Hamann." (Doc. 2, p. 3 ("Count III").) The Court presumes Plaintiff meant to assert the claim against the City, considering the TPD is not a named defendant and the City–not a city police department–is a municipality subject to suit. *See Pierre v. Schlemmer*, 932 F. Supp. 278, 280 (M.D. Fla. 1996) (explaining that a city police department is not a legal entity subject to suit, but that a city is a municipality that can be sued); *Florida City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995) (same).

the scope of his duty"). Count III is, therefore, due to be dismissed with prejudice.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Defendant City of Titusville's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 14) is **GRANTED IN PART AND DENIED IN PART** as follows:

  a.  The Motion is **GRANTED** insofar as it requests dismissal of Count III (Defamation).

  b.  In all other respects, the Motion is **DENIED**.

2.      Motion to Dismiss, With Prejudice, by Defendant Sheriff Wayne Ivey (Doc. 19) is **DENIED**.

3.      Defendant, Glen Hamann's Motion to Dismiss Plaintiff's Complaint with Prejudice with Memorandum of Law in Support (Doc. 28) is **GRANTED IN PART AND DENIED IN PART** as follows:

  a.  The Motion is **GRANTED** insofar as it requests dismissal of Count I (Negligence) and Count III (Defamation).

  b.  In all other respects, the Motion is **DENIED**.

4.      To summarize, the action will proceed as follows:

  a.  Count I will proceed against Defendants City of Titusville and Wayne Ivey, as Sheriff of Brevard County.

  b.  Count II will proceed against Defendants City of Titusville, Wayne Ivey, as Sheriff of Brevard County, and Glen Hamann.

  c.  Count III is **DISMISSED WITH PREJUDICE**.

5.      The Court **REJECTS** all arguments not specifically addressed.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on September 8, 2015.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record